**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Zoila Evangelina Velasquez Argueta, | |
| Plaintiff, | **AMENDED CHEEKS MOTION FOR APPROVAL OF SETTLEMENT** |
| v. | |
| Bnos Derech Yisroel d/b/a BDY School | Case No. 1:23-cv-02919 JMF |
| Defendant. | |

Plaintiff, Zoila Evangelina Velasquez Argueta, by and through their attorney, Daniel I. Schlade, submit the following Motion to Approve Settlement, and states:

1.      This is a case seeking unpaid overtime wages under the Fair Labor Standards Act and the New York Labor Law.

2.      On December 30, 2022, Plaintiff filed the original Complaint in the captioned case and Amended Complaint on April 12, 2023, to change venue. On May 4, 2023, Bnos Derech Yisroel d/b/a BDY School (hereinafter "defendants"), filed their Answer to Amended Complaint.   Right away, the parties conferred and began engaging in settlement talks.  These settlement talks began on or about May 9, 2023, and included the informal exchange of documents and other pertinent information to the case.  These conversations continued through May 31, 2023, when the parties reached a settlement in principle of $20,000.  Accordingly, it is the Parties position that the settlement was fair and reasonable, and they request approval of the settlement attached hereto as **Exhibit A**.

**Legal Standard**

3.      As the Court is aware, when Fair Labor Standards Act ("FLSA") claims are settled, the Court must review and scrutinize the proposed agreement to ensure fairness. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

4.      While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as confidentiality, general releases and counsel fees exceeding 40%. *Cheeks*, 796 F.3d at 206.

*5.*      This agreement contains no such red-flags: (i) the release contained in the agreement is not overbroad; (ii) there is no requirement for confidentiality, and (iii) attorney's fees are capped at 40%. The settlement falls within the range of reasonableness, in light of the best possible recovery and the risks of litigation and collection, and therefore should be approved.

6.      Furthermore, the settlement is arms-length between experienced counsel.  All Parties are represented by counsel highly experienced in this field.  Counsel for Plaintiff has more than 20 years of experience in Employment Law.  His practice focuses on employment law, primarily on behalf of employees, with an emphasis on wage and hour and employment discrimination cases, and he has successfully prosecuted scores of FLSA actions.

**Settlement Between Plaintiff and Defendants
is Objectively Fair, Adequate and Reasonable.**

7.      Pursuant to the terms of the Parties' Settlement Agreement, Defendants are paying the total sum of $20,000.00.  This settlement was achieved after extensive settlement negotiations between Plaintiffs' counsel and Defendants' counsel.  Plaintiff's amended Complaint alleged unpaid overtime wages of $15,461.94.

8.     The $20,000.00 settlement exceeds the damages alleged by Plaintiff.  It accounts for potential other damages under the FLSA, including liquidated damages and attorney's fees (although Defendant denies any liability under the Act).

### The Costs and Attorney's Fees are Fair and Reasonable

9.     Pursuant to the Settlement Agreement and agreement between Plaintiff and Counsel, of the $20,000 settlement amount, $8,000.00 is allocated to Plaintiff's counsel for attorney's fees. Plaintiff's counsel also incurred costs of $402 for filing the lawsuit, and $112 for service of process fees.  Counsel's fee is 40% of the overall settlement plus costs.  Plaintiff agreed, upon retaining counsel, to pay forty-percent of the settlement as a counsel fee, plus counsel's costs of prosecution.

10.     Plaintiff's Counsel's Proposed Timesheets are attached as **Exhibit B**.  They show counsel fees, and costs would have been in excess of $5,300.00 to date, and Plaintiff's counsel anticipates another three hours of time dedicated to this matter (valued at $1,200).  These potential hourly fees are squarely in line with the contingency fees being sought by Plaintiff's counsel pursuant to the contingency fee agreement.  "[C]ourts in the Second Circuit have often award[ed] lodestar multipliers between two and six.'" *Bondi v. DeFalco*, 2020 WL 2476006 at *7 (S.D.N.Y. 2020). In fact, "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).  Given the risk that Plaintiffs' counsel assumes with a contingency fee agreement; as well as the costs invested by Plaintiff's counsel, the $8,000 fee is fair and reasonable.

11.     Also, courts favor early settlement, and disallowing multipliers would discourage early settlements.  As set forth in *Martinez v. SJG Foods, LLC*, 2017 WL 4676828 at *2 (S.D.N.Y. 2017) (internal citations omitted), "given the swift resolution of this case and the Court's desire

to avoid 'creat[ing] a disincentive to early settlement, the requested fees are reasonable.'" Again, in light of the fact that Plaintiff's contingency fee attorney's fees are extremely close to the hourly equivalent, the contingency fee should be deemed reasonable.

12.    The rate of $400 per hour is reasonable for Plaintiff's counsel, who graduated from the Chicago Kent College of Law in 2000; who has been practicing continually since May 2001, and was admitted to the New York State Bar in February 2021. Plaintiff's Counsel was employed at Johnson & Bell, Ltd. from May 2001 until August 2003, where he worked in its commercial litigation department (including employment litigation claims for discrimination and restrictive covenants); thereafter, Plaintiff's Counsel was employed at Arnstein & Lehr from August 2003 to August 2014 in its commercial litigation department (including employment litigation claims for discrimination and restrictive covenants); thereafter Plaintiff's counsel was a sole practitioner from August 2014 until October 2021 (including employment litigation claims for FLSA violations and discrimination; and on October 2021 Counsel for Plaintiff opened Justicia Laboral, LLC, a law firm that focuses entirely on labor litigation claims.

13.    Employees who are defrauded of wages typically cannot afford reasonable hourly rates, and many sole practitioners are unwilling to risk their time and efforts to vindicate the rights of disenfranchised employees. The plaintiff in this matter could not afford to pay usual and customary hourly fees to litigate this matter on his behalf. Due to these circumstances, plaintiff's counsel represented plaintiff on a full contingency. This is consistent with the fee-shifting policy incorporated into the FLSA.

14.    Plaintiff's counsel's hourly rate has been approved at rates between $400 and $450 per hour in court. The requested rate of $400 per hour, given his expertise and experience, is fair. While some courts may require that a judge assess the reasonableness of the fee award, *see*

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 336 (S.D.N.Y. 2012), others defer to the contract between the plaintiff and his or her counsel. *Mares v. Dal Chon Kim*, 2016 U.S. Dist. LEXIS 96723, at *5 (S.D.N.Y. 2016) ("[T]he purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee for overreaching by the employer . . . . I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). The latter view was espoused by the United States Supreme Court in *Venegas v. Mitchell*, 495 U.S. 82 (1990), where the Court construed 42 U.S.C. § 1988 and held that the fee-shifting statute:

> controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. [The statute] itself does not interfere with the enforceability of a contingent-fee contract.

*Mitchell*, 495 U.S. at 90. Similarly, in *Cheeks*, the Second Circuit Court of Appeals noted that the duty to pay wages falls upon the employer -- not the employee's counsel who labored for an agreed-upon fee. In *Cheeks*, the Second Circuit expressly noted "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207. *Cheeks* only require a court to review "adequate documentation" of the fee, which is submitted herein, and a review of the settlement amount that the employer is paying to the employees. *Id.* at 206. *Cheeks* is in full accord with *Mitchell*, where the Supreme Court limited its view to what the "losing defendant must pay," and approved the plaintiff's counsel's fee based upon the private contract between the Parties, without intruding into the relationship between plaintiff and counsel. *See Mitchell*, 495 U.S. at 89.

15.    Although Plaintiff's counsel is seeking 40%, the *Cheeks* court held that such a fee is acceptable.  *Cheeks*, 796 F.3d at 206.  This fee should be viewed as particularly acceptable in the case at bar in light of the time Plaintiff's counsel dedicated to this matter; and the risks Plaintiff would be facing if this case went to trial.  In view of the foregoing, the Parties respectfully request jointly that the Court approve the Settlement Agreement.

### Plaintiff's Acknowledgment Of Fees/Costs

16.    In the Court's Order at D.E. 27, the Court stated that it would not approve Plaintiff's counsel's fees and costs without an acknowledgment executed by Plaintiff.  Attached hereto as Exhibit C is the requested acknowledgment.  Please note, Plaintiff is a Spanish speaker, and accordingly the acknowledgment includes both English and Spanish versions of the acknowledgement.

WHEREFORE, Plaintiff and Plaintiff's counsel respectfully request that the Court grant this Motion, and approve the Settlements attached as Exhibit A.

Respectfully submitted,


By: s/Daniel I. Schlade
        Daniel I. Schlade, Esq.
        *Attorney for Plaintiff*
        Justicia Laboral, LLC
        6232 N. Pulaski, #300
        Chicago, IL 60646
        Telephone: (773) 550-3775

## **CERTIFICATE OF SERVICE**

I, Daniel I. Schlade, an attorney, certify that I caused a true and correct copy of the attached

Corrected Cheeks Motion for Approval of Settlement to be served on:


Nadav Zamir
Email: nzamir@booklawllp.com

by email on 6/16/2023.

s/Daniel I. Schlade
Attorney For Plaintiff

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Settlement Agreement") is dated and deemed executed June 1, 2023 (the "Execution Date"), by and between Plaintiff **Zoila Evangelina Velasquez Argueta** ( "Plaintiff") and Defendant **Bnos Derech Yisroel** ( "Defendant") in settlement of Plaintiff's claims against Defendant in the matter of Argueta v. Bnos Derech Yisroel, No. 23-cv-2919 (S.D.N.Y.) (the "Action"). The Plaintiff and Defendant are collectively referred to herein as the "Parties."

WHEREAS, Plaintiff allege that they worked for Defendant as an employee; and

WHEREAS, a dispute has arisen regarding Plaintiff's alleged employment and the terms thereof, which dispute has resulted in the filing of an action in the United States District Court for the Southern District of New York, Civil Action No: 23-cv-29149 (hereinafter "the Litigation"), alleging, among other things, violations of federal and state wage and hour and overtime laws;

WHEREAS, Defendant deny any and all liability to Plaintiff in connection with the claims and allegations of the Litigation; and

WHEREAS, the Parties desire to resolve all disputes between them without the necessity of further litigation;

WHEREAS, all Parties to this Agreement are and have been represented by legal counsel at all times throughout the negotiation, preparation and execution of this Agreement, and all Parties have had a full and fair opportunity to consider this Agreement and review all of its terms with the assistance of such counsel; and

WHEREAS, all Parties to this Agreement have carefully considered other alternatives to executing this Agreement and have entered into this Agreement knowingly, voluntarily and without coercion; and

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed as follows:

1. Payment:

(a) In lieu of further litigation costs associated with defending the action commenced against them by Plaintiff and inconsideration for Plaintiff's execution of this Agreement, which includes a release, Defendant agrees to the following payment terms:

(b)    Defendant shall cause Plaintiff to be paid the gross sum of Twenty Thousand Dollars and No Cents **($20,000.00)**, inclusive of attorneys' fees and costs ("Settlement Funds"), as follows:

i. A check made payable to "Zoila Evangelina Velasquez Argueta" in the amount of Eleven Thousand Four Hundred Eighty Six and No Cents **($11,486.00)**.

ii. A check made payable to "Justicia Laboral, LLC" in the amount of Eight Thousand Five

1

Hundred Fourteen and No Cents **($8,514.00)**.

(c)     Within sixty (60) days of the Court's approval of the settlement documents, the Settlement Amount shall be transmitted to Plaintiff's counsel at 6232 N. Pulaski, #300, Chicago, IL 60646, by overnight mail.  Failure to transmit the Settlement Amount to Plaintiffs' counsel within sixty (60) days of Court approval of this Agreement shall constitute a default of this Agreement, and, upon expiration of a two business days' notice to cure sent via email to Defendants' counsel, Plaintiff shall be entitled to pursue a judgment against Defendant , for the Settlement Amount in either a District Court or State Court of appropriate jurisdiction.

2.     Release and Covenant Not To Sue:

(a) In consideration for the foregoing, the Plaintiff, on behalf of themselves and their dependents, heirs, executors, administrators, legal and/or personal representatives, successors, assigns and agents, do hereby knowingly, voluntarily, unconditionally and irrevocably **WAIVE, RELEASE** and **FOREVER DISCHARGE** (i) Bnos Derech Yisroel and each and every one of its divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities, predecessors, successors, management companies, assigns, officers, directors, trustees, employees, agents, members, shareholders, administrators, representatives, attorneys, insurers or fiduciaries, past, present or future, from any and all actions, causes of action, known or unknown, obligations, liabilities, claims, debts, losses, obligations, liabilities, charges, grievances, complaints, suits and/or demands concerning of arising from Plaintiffs' employment and wages during her employment with any of the Defendants or Releasees, or the termination thereof.  This release includes the release of any claims for unpaid, inaccurate payment or nonpayment of wages and tips under any federal, state or local law, including but not limited to New York and federal Law (29 U.S.C. §201, *et. seq.*, New York Labor Law §§ 191, 193, 196-d, 198-b, 650, *et. seq.*, 652, and 653 and relevant sections of N.Y. Comp. Codes R. & Regs.) and any other claims whatsoever, including, but not limited to, those alleged in the Amended Complaint and all employment, labor and wage and hour claims which could have been alleged, including without limitation all claims for restitution and other equitable relief, liquidated damages, compensatory damages, punitive damages, wages, tips, and penalties of any nature whatsoever.

3.     No Admission of Wrongdoing: This Agreement and compliance with this Agreement shall not be construed as an admission by Defendants of any liability whatsoever, or of any violation of any statute, regulation, duty, contract, right or order.

4.     Each Party To Bear Its Own Attorneys' Fees:  The Parties shall each bear their own attorneys' fees, costs, and expenses, except as may be expressly provided herein.

5.     Tax Liability and Indemnity. The Plaintiffs understand that no federal, state or local income taxes, payroll taxes or other taxes or withholdings have been or will be paid by Defendant account of or from the Settlement Amount.  The Plaintiff acknowledge that Defendant  and their counsels do not make and have not made any representations regarding the taxability of such amounts or the necessity for making withholdings therefrom, and the Plaintiff further acknowledge that they have not relied upon any advice or representation by Defendant  and their attorneys as to the necessity for withholding from or the taxability of such amounts.  The Plaintiff shall be solely responsible for any and all taxes which may be due as a result of his receipt of any portion of the Settlement Amount paid by Defendant  pursuant to this Agreement.  The Plaintiff further agree to accept full, complete, sole and entire responsibility for any tax liability, withholding liability, interest

or penalty that may be assessed against or incurred by Bnos Derech Yisroel or by the Plaintiff, or all, as a result of not withholding taxes from any portion of the money paid to the Plaintiff and the Plaintiff's attorney pursuant to this Agreement, and the Plaintiff agree to fully indemnify and hold Bnos Derech Yisroel, harmless against any such liability. If Bnos Derech Yisroel receives notice from any taxing authorities regarding any of the payments hereunder, Bnos Derech Yisroel will provide the Plaintiff's attorneys with a copy of such notice, within a reasonable period, so that the Plaintiff may address any requests made by such taxing authority.

6.    Entire Agreement: This Agreement, when signed by all Parties, shall constitute the entire understanding and agreement between the Parties and supersedes and cancels any and all prior oral and written agreements, if any, between and among them. The Parties warrant that there were no representations, agreements, arrangements or understandings between them, whether written or oral, relating to the subject matter contained in the Agreement which are not fully expressed herein and that no party has relied upon any such representations, agreements, arrangements or understandings, whether written or oral, in entering into this Agreement.

7.    Modification of the Agreement: This Agreement may not be changed unless the changes are in writing and signed by a proper representative of Plaintiffs and Defendants.

8.    Acknowledgments: Plaintiffs and Defendants acknowledge that they are not relying upon any statement, representation or promise in executing this Agreement except for statements, representations or promises expressly set forth in this Agreement. They further acknowledge and agree that the only consideration for signing this Agreement is as set forth in this Agreement.

10.    Governing Law: This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York, excluding the conflict-of-laws principles thereof. The Parties consent and stipulate to the personal jurisdiction of the United States District Court for the Southern District of New York and the Supreme Court of the State of New York in any subsequent proceeding to enforce this Agreement. In the event any party files an action for breach of this Agreement or to enforce its terms, the prevailing party in said proceeding or claim shall be entitled to recover their reasonable attorney's fees and costs.

11.    Enforceability: If any provision of this Agreement is held to be illegal, void, or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement, provided, however, that upon any finding by a court of competent jurisdiction that a release or waiver of claims or rights or a covenant set forth herein is illegal, void or unenforceable, Plaintiffs agree to promptly execute a release, waiver and/or covenant that is legal and enforceable.

12.    Counterparts: To signify their agreement to the terms of this Agreement and Release, the Parties have executed this Agreement on the date set forth opposite their signatures, which appear below. This Agreement may be executed in two or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all Parties hereto, notwithstanding that all of such Parties may not have executed the same counterpart. This agreement may also be executed by facsimile transmission.

3



**PLAINTIFF**:

I, **Zoila Evangelina Velasquez Argueta**, affirm that I have fully reviewed the foregoing Agreement with my attorney, that is has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provision, and that I enter into this Agreement knowingly and voluntarily.

DocuSigned by:

_____
**Zoila Evangelina Velasquez Argueta**

**DEFENDANT**:

**Bnos Derech Yisroel** affirms that, through a duly authorized agent, it has fully reviewed the foregoing Agreement with its attorney, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
**Bnos Derech Yisroel**

By: _____

Its: _____

4



**JUSTICIA LABORAL**

## AFFIDAVIT OF ATTORNEY'S FEES, TIME AND TASKS

Daniel I. Schlade, having been first duly sworn on oath, states:

1.    Plaintiff Zoila Evangelina Velasquez Argueta retained me and my law firm, Justicia Laboral, LLC, on or about September 2022 to represent her.  The lawsuit at bar involves claims under the Fair Labor Standards Act and New York state law to collect unpaid wages and overtime from Defendants, his former employer.

2.    I am the primary attorney responsible for handling this matter. I am licensed to practice law in the state of New York.  My New York Bar number is 5916697.

3.    Although we are representing Plaintiff in this matter on a contingency fee, our billable hourly rate is $400.00 per hour for matters of this caliber.

4.    Our $400.00 hourly rate is reasonable and comparable to rates charged by attorneys and staff of a comparative level, serving the same legal market: the metropolitan New York area. I have been practicing law for over twenty years.  Virtually the entirety of my practice has consisted of commercial litigation, and, for the last five years, I have been focusing my practice on labor and wage claims (although I had labor and wage experience prior to 2017).

5.    Below is an accounting of the time I dedicated to this matter.

| | | | |
|---|---|---|---|
| 12/26/2022 | Review client file (.3); interview client regarding claims against defendants (1.1). | 1.4 | $560.00 |
| 12/30/2022 | Draft and file complaint (1.5); draft summons, and appearance (.4). Review case assignment order and individual practices of assigned judge (.1); | 2.0 | $800.00 |
| 1/3/2023 | Review service of process (.3); communicate with SPS re service (.2). | .8 | $320.00 |



**JUSTICIA LABORAL**

|  | Summons Issued as to all Defendants (.1); review court order re consent to magistrate judge (.2) |  |  |
|---|---|---|---|
| 3/28/2023 | Summons Returned Executed. (.2) | .2 | $80.00 |
| 3/30/2023 | Review order to show cause (.2); Drafted and filed response to order to show cause, (.2); | .4 | $160.00 |
| 4/03/2023 | Review order to transfer case (.1). | .1 | $40.00 |
| 4/06/2023 | Review notice of transfer (.1); review case opening initial assignment notice and magistrate judge designation (.1) | .2 | $80.00 |
| 4/7/2023 | Drafted and filed Motion to amend complaint (.4); | .4 | $160.00 |
| 4/10/2023 | Review Order referring case to magistrate judge (.1); review order regarding early settlement conf and pretrial conf (.1); review order granting motion to amend complaint to correct venue (.1) | .3 | $120.00 |
| 4/12/2023 | Review order and re-filed amended complaint (.2) | .2 | $80.00 |
| 4/24/2023 | Reviewed order re notice by overnight mail. (.1); sent overnight mail (.1) | .2 | $80.00 |
| 4/25/2023 | Drafted and filed proof of service (.2). | .2 | $80.00 |



JUSTICIA LABORAL

| 5/4/2023 | Review answer to amended complaint and corporate disclosure statement (.3). | .3 | $120.00 |
|---|---|---|---|
| 5/6/2023 | Conf. with client (.2) | .2 | $80.00 |
| 5/9/2023 | Email with oc re: settlement demand (.2) | .2 | $80.00 |
| 5/16/2023 | Review notice of hearing pre-settlement conference; review notice of hearing settlement conference (.1). Conf. with client (.2) | .3 | $120.00 |
| 5/18//2023 | Email from oc with counter. (.2) Email to oc with counter (.2) | .2 | $80.00 |
| 5/24//2023 | Email from oc with settlement offer. (.2) Email oc with counter (.2) | .2 | $80.00 |
| 5/25/2023 | Email from oc with settlement offer. (.2) Email oc with counter (.2) | .2 | $80.00 |
| 5/30/2023 | Email from oc with settlement offer and payment terms. (.2) Email oc with counter (.2) | .2 | $80.00 |
| 5/31/2023 | Confer with OC to reach settlement. Confer with client (.4); draft and send email to oc accepting offer (.2) Drafted and filed notice of settlement (.2) | .8 | $320.00 |

## JUSTICIA LABORAL

| | | | |
|---|---|---|---|
| 6/1/2023 | Reviewed order re: settlement (.1); Drafted and sent Settlement to oc (.4) | .5 | $200.00 |
| 6/2/2023 | Review order re: Cheeks motion (.1) | .1 | $40.00 |
| 4/24/2023 | Draft Cheeks motion (1.3); draft Cheeks affidavit (1.0). | 2.3 | $920.00 |
| | | | |
| | | | |
| | | Subtotal: | $4,760.00 |
| **COSTS:** | | | |
| | Case Filing Fee | | $402.00 |
| | Service Fees | | $234.00 |
| | | | |
| | | | |
| | | **TOTAL** | **$ 5,396.00** |

6.    The tasks performed and the costs incurred were all reasonably and necessarily incurred in the case.  The fees and costs incurred reflect tasks that were performed competently and efficiently.

7.    The amount of attorneys' fees and costs incurred through June 7, 2023, are $5,396.00.

8.    I anticipate that I will have another three hours of time dedicated to this matter, with a value of $1,200.

9.    I have personal knowledge of the facts set forth in this Affidavit and can testify in accordance therewith.



## **<u>Verification</u>**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: June 7, 2023

s/Daniel I. Schlade

_____

Daniel I. Schlade

EXHIBIT C



June 15, 2023

      *RE:*    *Velasquez Argueta v., Yisroel*
              *23-CV-2919-JMF*

      *ACKNOWLEDGEMENT OF ATTORNEY'S FEES AND COSTS*

      I, Zoila Evangelina Velsquez Argueta, do hereby acknowledge and certify that on September 12, 2022, I signed an agreement with the law firm of Justicia Laboral, LLC to represent me in a lawsuit against Bnos Derech Yisroel d/b/a BDY School.  In this agreement, I agreed to pay Justicia Laboral, LLC a contingency fee of 40% of any settlement or judgment recovered for me, and I also agreed to pay Justicia Laboral, LLC's costs from any settlement or judgment recovered on my behalf.  I acknowledge that I have reached a settlement with BDY School where they agreed to pay $20,000 to settle the claim; and from the $20,000, I have agreed to pay $8,000 to Justicia Laboral, LLC for attorney's fees, and $514.00 for costs incurred by Justicia Laboral, LLC.

*SPANISH TRANSLATION:*

      Yo, Zoila Evangelina Velsquez Argueta, reconozco y certifico que el 12 de septiembre de 2022 firmé un acuerdo con la firma de abogados Justicia Laboral, LLC para representarme en una demanda contra Bnos Derech Yisroel d/b/a BDY School. En este acuerdo, acepté pagarle a Justicia Laboral, LLC una tarifa de contingencia del 40% de cualquier acuerdo o sentencia recuperada para mí, y también acepté pagar los costos de Justicia Laboral, LLC de cualquier acuerdo o sentencia recuperada en mi nombre. Reconozco que llegué a un acuerdo con BDY School donde acordaron pagar $20,000 para resolver el reclamo; y de los $20,000 he acordado pagar $8,000 a Justicia Laboral, LLC por concepto de honorarios de abogado y $514.00 por costos incurridos por Justicia Laboral, LLC.

*SO ACKNOWLEDGED:*

_____

Zoila Evangelina Velsquez Argueta

Date:_____
6/15/2023